# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

JOSHUA R. JOHNSON,

                    Petitioner,           :     Case No. 2:19-cv-3492

     - vs -                            District Judge Michael H. Watson
                                          Magistrate Judge Michael R. Merz

NORM ROBINSON, Warden,
  London Correctional Institution,

                                     :
                    Respondent.

# REPORT AND RECOMMENDATIONS

      This is a habeas corpus case brought *pro se* by Petitioner Joshua Johnson pursuant to 28 U.S.C. § 2254 to obtain relief from his conviction in the Court of Common Pleas of Fayette County, Ohio, on charges of illegal conveyance of drugs of abuse onto the grounds of a detention facility. The case is ripe for decision on the Petition (ECF No. 1), the State Court Record (ECF No. 4), the trial transcript (ECF No. 5-1), Respondent's Return of Writ (ECF No. 6), and Petitioner's Reply (ECF No. 9).

      The Magistrate Judge reference in the case has recently been transferred to the undersigned to help balance the Magistrate Judge workload in the District.

**Litigation History**

Johnson was indicted December 8, 2017, on four counts of illegal conveyance of drugs onto the grounds of a detention facility, but the count relating to methamphetamine was dismissed prior to trial.  A jury convicted Johnson on the three remaining counts.  After merging the second and third counts under Ohio Revised Code § 2941.25, the trial judge sentenced Johnson to thirty months on each of the two remaining counts with the time to be served concurrently.

Represented by new counsel, Johnson appealed to the Ohio Twelfth District Court of Appeals which affirmed.  *State v. Johnson*, 2019-Ohio-754 (Ohio App. 12th Dist.. Mar. 4, 2019), appellate jurisdiction declined, 2019-Ohio-2498 (2019).  Johnson next filed his Petition in this Court, pleading the following grounds for relief:

> **GROUND ONE:** The Trial Court erred in denying Petitioner's Crim. R. 29 Motion for Acquittal as the evidence was Insufficient to conclude that guilt had been proven beyond a reasonable doubt in violation of Petitioner's rights to Due Process Equal Law and Fair Trial as guaranteed by the 5th, 6th and 14th Amendment [sic], United States Constitution; Article 1, Section 10 and 16, Ohio Constitution.

> **GROUND TWO:** Trial Counsel Rendered Ineffective Assistance During Trial, resulting in a violation of Petitioner's right to Effective Assistance of Counsel as guaranteed by the 6th Amendment, United States Constitution; Sections 10 and 16, Article 1, Ohio Constitution.

> **GROUND THREE:** The Trial Court erred in denying Petitioner's motion for discovery sanctions, resulting in a violation of Petitioner's right of Due Process and a Fair Trial as guaranteed by the 5th, 6th and 14th Amendment [sic], United States Constitution; Section 10 and 16, Article 1, Ohio Constitution.

> **GROUND FOUR:** The Trial Court erred in sentencing Petitioner based upon a Trial Tax, resulting in a violation of Petitioner's right to Due Process and Fair Trial as guaranteed, by the 5th, 6th and 14th Amendment [sic], United States Constitution; Section 10 and 16, Article 1, Ohio Constitution.

(Petition, ECF No. 1, PageID 5-10).

# Analysis

**Ohio Constitutional Claims**

Each of Petitioner's four Grounds for Relief includes a claim under the Ohio Constitution. Federal habeas corpus courts are authorized to grant relief only for violations of the United States Constitution. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar concurring).

Therefore this Report will not analyze Petitioner's Ohio constitutional claims, over which we have no jurisdiction.

**Ground One: Insufficient Evidence to Convict**

In his First Ground for Relief, Johnson asserts he was convicted on insufficient evidence. Johnson presented this claim as his first Assignment of Error on appeal and the Twelfth District

decided it together with his manifest weight of the evidence claim as follows:

[*P14] Appellant argues that his conviction for illegal conveyance of the cocaine, heroin, and fentanyl onto the grounds of the jail is not supported by sufficient evidence and is against the manifest weight of the evidence because the baggies of drugs produced at trial were not properly authenticated under Evid.R. 901 as the baggies removed from appellant's buttocks. Specifically, appellant argues that Corporal Stegall never testified that the baggies presented at trial were the baggies he recovered from appellant. Similarly, Sergeant Payton never testified that the baggies presented at trial were the baggies Corporal Stegall handed to him.

[*P15] Crim.R. 29(A) provides that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." An appellate court reviews the denial of a Crim.R. 29(A) motion pursuant to the same standard as that used to review a sufficiency-of-the-evidence claim. *State v. Workman*, 12th Dist. Clermont Nos. CA2016-12-082 and CA2016-12-083, 2017-Ohio-8638, ¶ 19.

[*P16] When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. *Id*. at ¶ 20. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Watson*, 12th Dist. Warren No. CA2014-08-110, 2015-Ohio-2321, ¶ 22.

[*P17] To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Bradbury*, 12th Dist. Butler No. CA2015-06-111, 2016-Ohio-5091, ¶ 17. An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id*. at ¶ 18.

[*P18] Appellant was convicted of violating R.C. 2921.36(A)(2) and 2921.36(G)(2), which prohibit any person from knowingly conveying drugs of abuse onto the grounds of a detention facility.

[*P19] "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901. The "threshold requirement for authentication of evidence is low and does not require conclusive proof of authenticity." *State v. Freeze*, 12th Dist. Butler No. CA2011-11-209, 2012-Ohio-5840, ¶ 65. Rather, "the state only needs to demonstrate a 'reasonable likelihood' that the evidence is authentic." *Id*. Either circumstantial evidence or direct evidence may be used to prove the authenticity of evidence. *State v. Vermillion*, 4th Dist. Athens No. 15CA17, 2016-Ohio-1295, ¶ 14. Testimony of a witness with knowledge that the "matter is what it is claimed to be" is sufficient to properly authenticate an item pursuant to Evid.R. 901(A). *State v. Waver*, 12th Dist. Butler No. CA2015-08-155, 2016-Ohio-5092, ¶ 28. A chain of custody is part of the authentication requirement for the admission of evidence under Evid.R. 901. *State v. Glover*, 12th Dist. Brown No. CA2015-01-002, 2015-Ohio-3707, ¶ 30.

[*P20] We find that the drugs tested at BCI and produced at trial were properly authenticated under Evid.R. 901 as the drugs recovered from appellant. Corporal Stegall testified he took the baggies containing the suspected drugs from appellant and subsequently handed them directly to Sergeant Payton. Sergeant Payton took the baggies, put them in a bag, and logged them into evidence, thereby creating an evidence sheet for each baggie and assigning the baggies a shared tag identification number and a specific, individual identification number for each baggie. Once logged into evidence, the baggies were placed in a temporary evidence locker.

[*P21] Trial testimony indicates that once evidence is secured into the temporary locker, only two officers have access to the locker keys and may personally retrieve the evidence, namely, Sergeant Fausnaugh and another officer not involved in the case. Sergeant Fausnaugh testified that on July 2, 2017, he personally retrieved the baggies from the temporary locker and secured them into the property room, and that the following day, he personally transported them to BCI for testing. Each time, Sergeant Fausnaugh scanned the barcode assigned to the baggies' individual identification number and recorded the move on and signed the baggies' respective evidence sheet. Both sheets show that once the baggies were secured

5

in the temporary evidence locker, Sergeant Fausnaugh was the only officer who subsequently handled them.

[*P22] Ward, a forensic scientist at BCI, testified the baggies were submitted to BCI on July 3, 2017, were logged into BCI's system and stored in a secure evidence vault until testing, and were tested for drugs on November 20, 2017. Ward personally analyzed the substance contained in the baggies. She testified one baggie contained cocaine; the other contained a mixture of heroin and fentanyl. Once the analysis was completed, Ward sealed each baggie in a separate bag which she initialed and dated, then placed both bags into a larger container which she sealed, dated, and initialed. Trial evidence shows that the larger container was transported back to the property room at the Fayette County Sheriff's Office by Sergeant Fausnaugh.

[*P23] The state presented detailed testimony from several witnesses that traced each step in the chain of custody of the drugs from their removal from appellant's person through testing at BCI and presentation at trial. The trial testimony leaves little doubt that the baggies introduced at trial were the same baggies found on appellant's person in the drunk tank. Further, there is no evidence the baggies were tampered with in any way. There was sufficient testimony to determine that the baggies were what they were purported to be and thus, they were properly authenticated under Evid.R. 901.

[*P24] Moreover, because deficiencies or irregularities in the chain of custody generally go to the weight of the evidence, not its admissibility, it was for the jury to determine the weight to be given to this evidence. *Glover*, 2015-Ohio-3707 at ¶ 36. Based upon the jury's guilt finding, the jury clearly found that the baggies recovered from appellant's person in the drunk tank contained cocaine and a mixture of heroin and fentanyl. It is well-established that it is the trier of fact who makes determinations of credibility and the weight to be given to the evidence. *Id.* at ¶ 37. As the trier of fact, the jury was free to believe or disbelieve all, part, or none of the testimony of the state witnesses presented at trial. *Id.*

[*P25] Appellant's conviction is therefore not against the manifest weight of the evidence. Our determination that appellant's conviction is supported by the manifest weight of the evidence is also dispositive of the issue of sufficiency. *State v. Peyton*, 12th Dist. Butler No. CA2015-06-112, 2017-Ohio-243, ¶ 48. Appellant's first and second assignments of error are overruled.

6

*Johnson, supra*.

The Warden bifurcates his response to Ground One. He asserts that, to the extent Johnson is arguing that the chain of custody was not properly maintained and testified to, that is a question of Ohio evidence law on which the decision of the Twelfth District Court of Appeals is binding on this Court. On the other hand, the question of whether the State presented sufficient evidence to prove Johnson conveyed drugs into the jail is admittedly a federal constitutional question cognizable in habeas corpus, but the Warden contends the Twelfth District's decision of this question is entitled to deference under 28 U.S.C. § 2254(d)(1) and (2)(Return, ECF No. 6, PageID 270-79.

Johnson spends the first part of his Reply arguing the chain-of-custody question (ECF No. 9, PageID 299-305). As the Warden argues, the question of whether the evidence satisfied Ohio R. Evid. 901 is purely a question of state law on which we are bound by the state courts' decision. *Bradshaw v. Richey*, 546 U.S. 74 (2005).

On the other hand, a claim that there is insufficient evidence to convict does state a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(*en banc*). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006);

*United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was

recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law

which determines the elements of offenses; but once the state has adopted the elements, it must

then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after

enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110

Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner
> challenges the constitutional sufficiency of the evidence used to
> convict him, we are thus bound by two layers of deference to groups
> who might view facts differently than we would. First, as in all
> sufficiency-of-the-evidence challenges, we must determine
> whether, viewing the trial testimony and exhibits in the light most
> favorable to the prosecution, any rational trier of fact could have
> found the essential elements of the crime beyond a reasonable doubt.
> See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.
> Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-
> evaluate the credibility of witnesses, or substitute our judgment for
> that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th
> Cir. 1993). Thus, even though we might have not voted to convict a
> defendant had we participated in jury deliberations, we must uphold
> the jury verdict if any rational trier of fact could have found the
> defendant guilty after resolving all disputes in favor of the
> prosecution. Second, even were we to conclude that a rational trier
> of fact could not have found a petitioner guilty beyond a reasonable
> doubt, on habeas review, we must still defer to the state appellate
> court's sufficiency determination as long as it is not unreasonable.
> See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus

case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to

the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*,

541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc);

*Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam).  The federal courts do not make credibility determinations in reviewing sufficiency of the evidence claims.  *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

In order to convict Johnson of a violation of Ohio Revised Code §§ 2921.36(A)(2) and 2921.36(G)(2), the State had to prove that Petitioner knowingly conveyed one or more drugs of abuse into a detention facility.  There is no doubt that the Fayette County Jail qualifies as a "detention facility" for purposes of the statute. There is no dispute of the fact that Johnson was taken to that facility after having been arrested, apparently for creating a disturbance, after he refused to leave a hospital upon being discharged.  When Johnson was changing into jail clothing

> Corporal Matthew Stegall noticed what appeared to be a cellophane baggie protruding from the intergluteal cleft of appellant's buttocks. Corporal Stegall inquired.  Appellant replied it was cocaine and handed the baggie to the officer. Upon being asked if he had anything else, appellant answered affirmatively, removed another baggie from his buttocks, and handed it to the officer.

*Johnson* at ¶ 3. Since cocaine is a drug of abuse, the State would have had enough evidence to convict as to the cocaine without any more than the Petitioner's admission that the substance was cocaine. As to the second baggie, the State had sufficient proof that Johnson brought it into the jail because he removed it from the same place as the first baggie and handed it to Officer Stegall. It had to prove the second baggie also contained a drug of abuse, but Johnson did not contest in the Ohio courts and does not contest here the lab technician's testimony that what she analyzed from the purported second baggie contained heroin and fentanyl.

The contested element of the crime here is possession of the drugs identified by the technician at trial as being the same substances Johnson brought into the jail. There is no rigid constitutional chain of custody requirement. Instead, to survive a Due Process challenge, the State must produce sufficient evidence which, when construed strongly in favor of the prosecution, would support a finding by a reasonable factfinder beyond a reasonable doubt. That is the standard the Twelfth District said it was applying. To prevail on his First Ground for Relief, Johnson must show either that the Twelfth District unreasonably applied *Jackson, supra*, or that it made an unreasonable determination of the facts. Johnson's argument focuses on the facts (Reply, ECF No. 9, PageID 300).

Officer Stegall testified that when he received the two baggies from Johnson, he "handed them over to Sergeant Payton, the shift supervisor. (Trial Tr., ECF No. 5-1, PageID 165). Stegall did not recall marking the baggies in any way. *Id.* at PageID 167. Sergeant Payton testified he was called to the Jail on the date Johnson was arrested because suspected narcotics had been located on an inmate. *Id.* at PageID 171. When he arrived at the Jail, Stegall told him he had recovered the narcotics and handed him the two baggies. *Id.* at PageID 172. He took them across the street

and placed them in "property"[1] for eventual testing by the Bureau of Criminal Identification.  *Id.*.
The typical procedure for placing an item in the temporary locker in the property area is to log it
into a computer system which provides a barcoded tag and number. *Id.* at PageID 273.  That is the
procedure Payton followed in this instance.  *Id.* He identified State's Exhibits 3 and 4 as the
evidence sheets generated by the computer for the two baggies.  *Id.* at PageID 174-75.

Sheriff's Sergeant Jon Fausnaugh identified himself as a detective with responsibility for
investigating drug and other crimes; as an additional duty, he is the property room manager.  *Id.* at
PageID 179.  He explained the process:

> when it's [the piece of evidence] moved the, they are scanned. A
> barcode is affixed to the actual piece of evidence and that barcode
> corresponds with the written chain of custody form. And when the
> property moves from the temporary locker into the property room
> or, and then anywhere else, that barcode is scanned and then the
> change is reflected into the computer. .. and also a signature is, is added
> to the, the chain of custody.

*Id.* at PageID 182-83.  Fausnaugh signed the chain of custody sheet when he moved the baggies from
the temporary evidence locker where they had been placed by Payton to the property room, thirty feet
away. *Id.* at PageID 185.  He again signed the chain of custody sheet when he took the baggies from
the property room to BCI on July 3, 2017.  *Id.* Fausnaugh took the two baggies taken from Johnson to
BCI along with a third baggie of drugs taken from a Micah Kidwell. *Id.* at PageID 187-88.  He retrieved
them from BCI on November 28, 2017. *Id.* at PageID 188.  Fausnaugh admitted that he mistakenly
shipped the Kidwell baggie along with the Johnson baggies when it should have been sent in separate
packaging.  *Id.* at PageID 190.

Forensic scientist Laurel Ward testified to the usual process for receiving evidence at BCI and
that she had tested the two baggies from Mr. Johnson which contained respectively cocaine (bag one)
and heroin and fentanyl (bag two).  She also received and tested the bag from Kidwell which contained

---

[1] Short for "property room."

methamphetamine.  *Id.* at PageID 206.  She was very briefly cross-examined on the chain of custody process, but not on her qualifications or the results of her testing.

From this evidence, the Twelfth District concluded that the baggies had been properly authenticated.  Johnson disagrees.  He believes the Twelfth District incorrectly found that Stegall handed the drugs to Payton as soon as he recovered them (Reply, ECF No. 9, PageID 300).  That finding would not be supported by the record, because neither Stegall nor Payton said that.  Instead, Payton said he responded to the Jail on a report of suspected narcotics and then Stegall handed him the baggies.  But the Twelfth District did not make the finding of which Johnson complains.  Instead, it found "Corporal Stegall took possession of the two baggies and handed them to Sergeant Michael Payton. In turn, the sergeant logged the two baggies into the temporary evidence locker." *Johnson*, *surpra*, ¶ 3.  It does not say when the hand off took place.

Johnson next complains

> Officer Stegall testified that he did not mark on the two baggies in any manner to identify where the baggies came from, or who the baggies belong to, nor did he document, or log the 2 baggies into any computer system, or written log record, prior to allegedly handing over the 2 baggies to Officer Payton. Therefore, there was no chain of custody ever established between Officer Stegall and Officer Payton, from the point of time that Officer Stegall alleged handed the 2 baggies to Officer Payton;

(Reply, ECF No. 9, PageID 300-01.)  However, there is evidence of the chain of custody from Stegall to Payton:  both were under oath when Payton testified he handed it to Stegall and Stegall testified he received it.  While the transfer is not documented in any evidence before the Court, the Due Process Clause does not require that every step in a chain of custody be documented.  And indeed what more would such a document add to the proof?  Witnesses can lie about what they saw or did, but documents can also be falsified.  In any event, the Constitution does not demand such documentation.

Johnson also complains that neither Stegall nor Payton can "attest to the validity of each other's actions." (Reply, ECF No. 9, PageID 301.) That's certainly true and neither one of them purported to testify what the other had done. But the Constitution does not require that every material fact be proved by the testimony of more than one person. People are routinely convicted on the testimony of the victim alone and that result has been uniformly upheld. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008), *citing United States v. Terry*, 362 F.2d 914, 916 (6th Cir. 1966) ("The testimony of the prosecuting witness, if believed by the jury, is sufficient to support a verdict of guilty."); see also *O'Hara v. Brigano*, 499 F.3d 492, 500 (6th Cir. 2007) (holding that victim's testimony that habeas petitioner abducted her and raped her was constitutionally sufficient to sustain conviction despite lack of corroborating witness or physical evidence); *United States v. Howard,* 218 F.3d 556, 565 (6th Cir. 2000) (holding that even if the only evidence was testimony of the victim, that is sufficient to support a conviction, even absent physical evidence or other corroboration); *United States v. Jones*, 102 F.3d 804, 807 (6th Cir. 1996) (noting that there is sufficient evidence to support a conviction even if the "circumstantial evidence does not remove every reasonable hypothesis except that of guilt") (internal quotation marks omitted).

Petitioner complains of Officer Fausnaugh's mistake of sending his evidence along with that of Kidwell to BCI. But he incorrectly claims the "drugs" were mixed. There is no proof of that assertion. The record shows Johnson's two baggies were grouped with the Kidwell baggie into a larger bag. Although Johnson was initially charged for the contents of the Kidwell bag, that mistake was corrected by the State before trial. Habeas corpus does not exist to correct harms arising from false accusations which do not result in conviction.

Petitioner's First Ground for Relief is without merit and should be dismissed.

**Ground Two:  Ineffective Assistance of Trial Counsel**

In his Second Ground for Relief, Johnson claims he received ineffective assistance of trial counsel in that counsel failed to object to the admission of State's Exhibit 2. (Petition, ECF No. 1, PageID 19).  Johnson raised this as his Third Assignment of Error on direct appeal and the Twelfth District decided it as follows:

> [*P28]  Appellant argues defense counsel was ineffective because he failed to object to the admission of the baggies into evidence even though they were not properly authenticated under Evid.R. 901. The record shows that while defense counsel did not object to the admission of the baggies into evidence, he did raise the issue of lack of authentication in his Crim.R. 29 motions for acquittal.
>
> [*P29]  To prevail on his ineffective assistance of counsel argument, appellant must show that his trial counsel's performance was deficient, and that he was prejudiced as a result. *State v. Green*, 12th Dist. Warren No. CA2017-11-161, 2018-Ohio-3991, ¶ 42; *Strickland v. Washington,* 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L. Ed. 2d 674 (1984). Trial counsel's performance will not be deemed deficient unless it fell below an objective standard of reasonableness. *Strickland* at 688. To show prejudice, appellant must establish that, but for his trial counsel's errors, there is a reasonable probability that the result of his trial would have been different. *Id*, at 694. The failure to make an adequate showing on either prong is fatal to an ineffective assistance of counsel claim. *State v. Bell*, 12th Dist. Clermont No. CA2008-05-044, 2009-Ohio-2335, ¶ 77, citing *Strickland* at 697.
>
> [*P30]  Because we found that the baggies of drugs were properly authenticated under Evid.R. 901 in the first two assignments of error, defense counsel was not ineffective in failing to object to their admission into evidence. *State v. Boone*, 9th Dist. Summit No. 26104, 2013-Ohio-2664, ¶ 22. "[C]ounsel's failure to object to the lack of proper authentication as to admitting the drugs * * * into evidence cannot be said to be deficient where such objection goes only to the weight of the evidence and not the admissibility." *State v. Walker*, 8th Dist. Cuyahoga No. 83035, 2004-Ohio-156, ¶ 31. Furthermore, defense counsel's "failure to raise an authentication objection [at trial] may be considered sound trial strategy, and * * * falls within the range of reasonable professional assistance."

14

*Payton*, 4th Dist. Ross No. 01CA2606, 2002- Ohio 508, 2002 Ohio
App. LEXIS 496, *9 (Jan. 25, 2002).

*Johnson, supra*.

Johnson speculates in his Reply that if his trial attorney had made a lack of authentication

objection, the exhibit would have been excluded and the result of the trial would have been

different.  However, it cannot be ineffective assistance of trial counsel to fail to make an objection

which is unwarranted in law as the Twelfth District held the authentication was sufficient under

Ohio R.Evid. 901.  Moreover, as the appellate court held, deficiencies in authentication go only to

the weight and not the admissibility of evidence.

Even if the objection had been meritorious, there was no prejudice in counsel's saving the

objection until the Rule 29 motion because at that point the State was "locked in" to whatever

proof they had or had not made of authenticity.  If counsel had made the objection before the State

rested, the judge could have allowed the State to reopen and fix its mistake.  In any event, counsel

did not procedurally default the defense by not making a contemporaneous objection because the

Twelfth District heard the claim on the merits.

Petitioner's Second Ground for Relief is without merit.


**Ground Three:  Error in Denying Discovery Sanctions**


In his Third Ground for Relief, Johnson argues the trial court deprived him of due process

and a fair trial when it denied his motion for discovery sanctions related to video recording of

Johnson's changing clothes in the drunk tank which is the incident during which Officer Stegall

testified he saw Johnson removed the baggies from his buttocks.   (Petition, ECF No. 1, PageID

20-23).  He relies on the obligation to provide exculpatory evidence recognized by the Supreme

Court in *Brady v. Maryland*, 373 U.S. 83 (1963).

Johnson raised this claim as his Fourth Assignment of Error on direct appeal and the twelfth

District decided it as follows:

> [*P34]  Appellant argues the trial court erred in denying his Crim.R. 16 motion. Appellant asserts the trial court should have dismissed the case or imposed other appropriate discovery sanctions because the state failed to provide appellant with the "potentially exculpatory" videotape of the drunk tank where appellant changed his clothes on the evening of the offense. Appellant asserts that Corporal Stegall's testimony plainly indicates such videotape exists. The trial court denied appellant's Crim.R. 16 motion on the ground that Corporal Stegall testified there was "a camera outside of the drunk tank" that looks toward the drunk tank.

> [*P35]  Crim.R. 16 governs discovery in criminal prosecutions and requires the state, upon motion of the defendant, to make available evidence material to the preparation of the defense. *State v. Wilson*, 12th Dist. Butler No. CA2012-12-254, 2013-Ohio-3877, ¶ 14; *State v. Weaver*, 12th Dist. Butler No. CA2009-01-022, 2009-Ohio-5923, ¶ 36. Crim.R. 16(L)(1) provides:

>> The trial court may make orders regulating discovery not inconsistent with this rule. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.

> [*P36]  "Prosecutorial violations of Crim.R. 16 are reversible only when there is a showing that (1) the prosecution's failure to disclose was a willful violation of the rule, (2) foreknowledge of the information would have benefited the accused in the preparation of his defense, and (3) the accused suffered some prejudicial effect." *State v. Joseph*, 73 Ohio St.3d 450, 458, 1995- Ohio 288, 653 N.E.2d 285 (1995). Sanctions for a Crim.R. 16 discovery violation are within the discretion of the trial court. *State v. Parson,* 6 Ohio St.3d 442, 445, 6 Ohio B. 485, 453 N.E.2d 689 (1983). When deciding on a sanction, the trial court must impose the least severe sanction that is consistent with the purpose of the rules of discovery.

16

*Palmer*, 12th Dist. Butler Nos. CA2013-12-243 and CA2014-01-014, 2014-Ohio-5491, ¶ 39.

[*P37] Upon reviewing the record, we find no error in the trial court's denial of appellant's Crim.R. 16 motion. Contrary to appellant's assertion, Corporal Stegall's testimony regarding the videotape was ambiguous. On direct examination, Corporal Stegall testified that the video camera was outside the drunk tank, thus focusing on the area outside the tank. However, when asked on cross-examination whether "there is a camera that shows the inside of the drunk tank," the officer replied, "Yes."

[*P38] Even assuming, arguendo, that there was a video camera inside the drunk tank, nothing in the record suggests or indicates that a videotape depicting appellant changing his clothes and the discovery of the baggies exists, or that it would be exculpatory. Moreover, appellant failed to establish that the state's failure to disclose the alleged videotape was willful, and there is no indication that the alleged violation was willful. We therefore find that the trial court did not abuse its discretion in denying appellant's Crim.R. 16 motion.

[*P39] Appellant's fourth assignment of error is overruled.

*Johnson, supra.*

The Warden defends this claim by asserting it is procedurally defaulted because it was not presented as a constitutional claim under *Brady* in the Twelfth District (Return, ECF No. 6, PageID 284). In the alternative and on the merits, the Warden notes the trial judge found it was not proven that any such exculpatory evidence existed and Johnson has not overcome that finding with clearly convincing evidence as required by 28 U.S.C. § 2254(e)(1).

The Magistrate Judge finds Johnson procedurally defaulted any claim under *Brady* by not raising it in the trial court or on appeal. *Brady* is not cited in Appellant's Brief (State Court Record, ECF No. 4, Ex. 5). Instead the claim is argued entirely in terms of Ohio R. Crim. P. 16 and decided on the basis of state jurisprudence around that rule. While Rule 16 protects many of the same interests as *Brady*, it is much broader (e.g., it requires production of inculpatory as well as

17

exculpatory evidence).  In any event, a state appellate court presented with a Rule 16 claim would not have understood it was deciding a federal constitutional question.

The claim is not saved from default by the fact that Johnson mentions "due process" and "fair trial" in the wording of this Assignment of Error.  Merely using talismanic constitutional phrases like "fair trial" or "due process of law" does not constitute raising a federal constitutional issue.  *Slaughter v. Parker,* 450 F.3d 224, 236 (6th Cir. 2006); *Franklin v. Rose,* 811 F.2d 322, 326 (6th Cir. 1987); *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *citing Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2nd Cir. 1984). Mere use of the words "due process and a fair trial by an impartial jury" are insufficient. *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004)(same). "A lawyer need not develop a constitutional argument at length, but he must make one; the words 'due process' are not an argument." *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995).

Alternatively and on the merits, the Twelfth District held Johnson had not shown that there existed a video recording of the incident or that such a recording would have been exculpatory. *Johnson, supra,* ¶ 38.  Johnson has not shown by clear and convincing evidence that that finding is in error.  He notes the judge could have watched the video to determine if it was exculpatory, but the judge was not under any constitutional duty to do so.  There is not even any proof of whether a recording from the date of Johnson's booking continued to exist as opposed to having been recorded over.

Petitioner's Third Ground for Relief should be dismissed.

**Ground Four:  Unconstitutionally Severe Sentence Based on "Trial Tax"**

In his Fourth Ground for Relief, Johnson claims he was deprived of due process and a fair trial by being sentenced more severely than if he had pleaded guilty.  As evidence of this claim, he notes that the prosecutor at sentencing reminded the judge that recent sentencings for bringing drugs into jails had been in the vicinity of eighteen months on negotiated pleas, but here "we actually had to go to trial. So, the State in this case would ask for a term of no less than 24 months." (Petition, ECF No. 1, PageID 24).  As noted above, the trial court imposed a sentence of thirty months on each of the two convictions, but ordered them served concurrently.  Johnson points to no evidence and makes no allegations about any plea negotiations in the case.

Johnson raised this claim on direct appeal as his Fifth Assignment of Error and the Twelfth District decided it as follows:

> [*P42]  Appellant argues the trial court penalized him for exercising his right to a jury trial when it sentenced him to 30 months in prison. Specifically, appellant asserts that "an improper taint of a trial tax lingers over this case" because the prosecutor's request that appellant be sentenced to a lengthy prison term for pursuing a jury trial was not explicitly rejected by the trial court during its sentencing colloquy. At sentencing, the prosecutor made the following statements:
>
>> [I]llegal conveyance of drugs into the jail, I believe the recent sentencings in this court have been in the area of 18 months and those were via plea or agreements and jointly recommended pleas. In this case we actually had to go to trial. Mr. Johnson just stated that he didn't have anything on him. He has refused to acknowledge or show any remorse in this matter. So, the state in this case would ask for a term of no less than 24 months.
>
> [*P43]  The prosecutor's statements followed appellant's allocution during which he denied possessing the baggies when he was in the drunk tank and alleged the testimony of the state witnesses was fabricated.

19

[*P44]  "[A] defendant is guaranteed the right to a trial and should never be punished for exercising that right[.]" *State v. O'Dell*, 45 Ohio St.3d 140, 147, 543 N.E.2d 1220 (1989); *State v. Noble*, 12th Dist. Warren No. CA2014-06-080, 2015-Ohio-652, ¶ 11. "[A] sentence vindictively imposed on a defendant for exercising his constitutional right to a jury trial is contrary to law," "regardless of whether the evidence of his guilt is said to be overwhelming." *State v. Rahab*, 150 Ohio St.3d 152, 2017-Ohio-1401, ¶ 8, 80 N.E.3d 431; *Noble* at ¶ 11. Moreover, it is improper for a trial court to create the mere appearance that it has increased a defendant's sentence because the defendant has elected to put the government to its proof. *Noble* at ¶ 12. A court may not make statements from which someone may infer that a defendant may have been punished for pursuing a jury trial. Id. The appearance of a trial tax is impermissible as it creates a chilling effect on one's constitutional right to trial. *Id*.

[*P45]  "We review the entire record - the trial court's statements, the evidence adduced at trial, and the information presented during the sentencing hearing - to determine whether there is evidence of actual vindictiveness." *Rahab* at ¶ 19. "We will reverse the sentence only if we clearly and convincingly find the sentence is contrary to law because it was imposed as a result of actual vindictiveness on the part of the trial court." *Id*.

[*P46]  Upon thoroughly reviewing the entire record, we find that the trial court did not impose an increased sentence in retaliation for appellant pursuing a jury trial. In sentencing appellant to an aggregate sentence of 30 months in prison, the trial court properly considered the principles and purposes of sentencing in R.C. 2929.11 as well as the recidivism and seriousness factors in R.C. 2929.12. In particular, the trial court focused on appellant's "extensive prior criminal history," which included prior prison sentences for heroin trafficking and possession of heroin, cocaine, and criminal tools, his failure to respond favorably to sanctions previously imposed, and his lack of genuine remorse. "Genuine remorse is one factor to be considered by the court when it makes its sentencing decision." *Rahab*, 2017-Ohio-1401 at ¶ 28, 150 Ohio St. 3d 152, 80 N.E.3d 431. Likewise, "[a]cceptance of responsibility is an appropriate sentencing consideration." *Id*, at ¶ 17. Appellant relies solely upon the prosecutor's statements at sentencing, and not that of the trial court, in support of his trial tax argument. However, nothing in the record indicates or suggests that the trial court based its sentence upon appellant's decision to go to trial.

[*P47]  Appellant's fifth assignment of error is overruled.

*Johnson, supra.*

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).  Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

Although the Twelfth District relied on state court case law in its decision, those cases relied on underlying United States Supreme Court law.  Justice DeWine in Rahab, for example, relied on *Bordenkircher v. Hayes*, 434 U.S. 357 at 363 (1978), citing *North Carolina v. Pearce*, 395 U.S. 711 at 738 (1969) (Black, J., concurring in part and dissenting in part), for the principle that "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *Pearce* is the leading Supreme Court case on vindictiveness in sentencing and the precedent against which the Twelfth District's decision must be measured.  In *Pearce* the Supreme Court created a presumption of vindictiveness when a judge imposed a more severe sentence on remand after appeal.  That situation does not apply here because it is an initial sentencing that is at issue.  A defendant who does not have the benefit of the presumption can still prevail if he can show actual vindictiveness. *Craycraft v. Cook*, 634 Fed. Appx. 490 (6th Cir. 2015); *United States v. Jackson*, 181 F. 3d 740, 744 (6th Cir. 1999); *Rahab v. Buchanan*, 2018 U.S. Dist. LEXIS, 2018 WL 2764454 (S.D. Ohio June 8, 2018).

Whether a trial judge acted with a vindictive motive is a question of fact on which this

habeas corpus court must defer to the state appellate court unless a petitioner demonstrates error in a factual finding by clear and convincing evidence.

The Twelfth District squarely held the trial judge here was not actually motivated by vindictiveness. *Johnson, supra,* at ¶ 46. Johnson counters by asserting that there is nothing in the record to show the trial judge did not grant the prosecutor's request because Johnson insisted on a trial which he says is proven by the trial judge's failure to reject, on the record, the prosecutor's request (Reply, ECF No. 9, PageID 314-15). That argument attempts to shift the burden of proof to the State. Supreme Court precedent places the burden of proving actual vindictiveness on the defendant, not on the State to disprove it. Here the trial judge expressly said he was considering the purposes of sentencing, Johnson's recidivism and failure to respond to lesser sanctions, and his lack of remorse. Johnson does not deny that those factors weighed against him and that it was proper for them to do so. He does not claim he expressed any remorse and in fact continues to claim to be innocent. Given where the drugs were found, the only factual hypothesis consistent with Johnson's innocence is that the drugs were planted on him by law enforcement and he offers no evidence that any such thing happened.

The facts in this case strongly contrast with those in *Rahab* where the undersigned found evidence of actual vindictiveness. There the trial judge herself expressly threatened Rahab that if he did not accept the plea bargain and the offered three-year sentence, she would impose a harsher sentence after conviction at trial. Then, when the jury convicted, she reminded Rahab of her threat and doubled the sentence. There is nothing like that here. Whatever the prosecutor's motivation, there is no evidence the trial judge shared it.

Petitioner's Fourth Ground for Relief should be dismissed on the merits because the Twelfth District's decision is not an objectively unreasonable application of *Pearce*.

22

**Conclusion**

In accordance with the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

April 22, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.